Tania Beth Rose (SBN 151514)
Attorney and Counselor
180 Montgomery Street, Ste. 940
San Francisco, CA 94104
415-986-1338

| | | |
|---|---|---|
| EDWIN LOCKETT, | ) | |
| | ) | |
|    Plaintiff, | ) | Case No. 2:07-cv-00301-GEB-CMK |
| | ) | |
|    v. | ) | Objections to Magistrate Kellison's |
| | ) | Findings and Recommendations |
| CITY OF MT. SHASTA | ) | 28 U.S.C. 636 (b) (1) |
| POLICE DEPARTMENT, | ) | |
| ET. AL., KEITH ERICSON, | ) | |
| IN HIS INDIVIDUAL | ) | |
| CAPACITY, | ) | |
| | ) | |
|    Defendants. | ) | |

## A.   Heck v. Humphrey was not meant to apply to a case such as the one before this court

Plaintiff argued in his original brief to this court that footnote seven in *Heck v. Humphrey,* 512 U.S. 477 (1994), clarified that it never meant to bar cases such as this one, that is, where a 1983 claim followed a conviction on an underlying matter. A brief review of *Heck* follows.

While was serving time for a conviction for manslaughter, plaintiff *Heck* brought a § 1983 suit alleging that an unlawful investigation infringed upon his 4th Amendment rights. *Heck v. Humphrey*, 512 U.S. 477, 479 (1994). The complaint sought compensatory and punitive damages, but did not seek injunctive relief ordering his release from state custody. *Id.* The specific question under review

by the court was whether money damages premised on an unlawful conviction

could be pursued under § 1983.  The Court held that such claims were not

cognizable, unless the conviction has been nullified, reversed or expunged, lest

the validity and finality of the prior conviction be collaterally attacked through

the civil courts.

The Court began by affirming its holding in *Preiser v. Rodriguez*, 411 U.S. 475

(1973), which held that § 1983 claims could not be used to challenge the fact or

duration of the confinement, but rather such claims must be filed under habeas

corpus review.  *Id.*, at 481. Because of the ruling under *Preiser*, the Court reasoned

that "certain claims by state prisoners are not *cognizable* under that provision."

*Id.* (emphasis original).

The *Heck* court itself framed the issue as one specific to the juxtaposition of

prisoner litigation statutes: This case lies at the intersection of the two most fertile

sources of federal court prisoner litigation--the Civil Rights Act of 1871, Rev. Stat.

§1979, as amended, 42 U.S.C. § 1983 and the federal habeas corpus statute, 28

U.S.C. § 2254. Both of these provide access to a federal forum for claims of

unconstitutional treatment at the hands of state officials, but they differ in their

scope and operation. *Ibid.*

The Court in *Heck* then considered the question of what specific claims could

be cognizable under § 1983.  *Heck* held that the key factor in determining the

cognizability of a § 1983 claim is whether "establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction." *Id.*, at 481-82.

The Supreme Court's opinion in Heck included a caveat. The Court wrote: "[I]f the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." Id. at 487 (footnotes omitted). The Supreme Court gave an example in a footnote, stating:

"[A] suit for damages attributable to an allegedly unrerasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful. In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury which, we hold today, does not encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned)."

Id. at 487 n.7 (citations omitted).

Souter's Concurrence

Justice Souter filed a concurring opinion in which he rejected that part of the majority opinion that prohibited collateral attacks on criminal convictions as basis for excluding § 1983 claims, because the broad language of § 1983 "speaks of deprivations of 'any' constitutional rights, privileges, or immunities, by '[e]very' person acting under color of state law" and that § 1983 "provide[s] a remedy, to be broadly construed, against all forms of official violation of federally protected rights." *Id.*, at 502 (Souter, J. concurring) *citing Dennis v. Higgins*, 498 U.S. 439, 443, 445, (1991) (*quoting Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 700-701 (1978).  Indeed, Souter's stated that neither the favorable termination of a conviction nor the negation of an element of the crime should be a jurisdictional restriction, lest plaintiffs be prevented from seeking justice in federal courts that was unjustly unavailable in state forums.  *Id.* at 502 (Souter, J. concurring).

In *Nelson v. Campbell*, 541 U.S. 637 (2004), The Court allowed a death row inmate to bring a 1983 challenge to a method of execution arguing that it violated his eight amendment right against cruel and unusual punishment. The 1983 plaintiff had already brought and lost a habeus claim, and the lower courts held that his 1983 claim was barred by *Heck*. In reversing, The Court stated, in relevant part,

4

We note that our holding here is consistent with our approach to civil rights damages actions, which, like method-of-execution challenges, fall at the margins of habeas. Although damages are not an available habeas remedy, we have previously concluded that a §1983 suit for damages that would necessarily imply the invalidity of the fact of an inmate's conviction, or necessarily imply the invalidity of the length of an inmate's sentence, is not cognizable under §1983 unless and until the inmate obtains favorable termination of a state, or federal habeas challenge to his conviction or sentence. *Heck* v. *Humphrey*, 512 U. S. 477, 487 (1994); *Edwards* v. *Balisok*, 520 U. S. 641, 648 (1997). This favorable termination requirement is necessary to prevent inmates from doing indirectly through damages actions what they could not do directly by seeking injunctive relief-challenge the fact or duration of their confinement without complying with the procedural limitations of the federal habeas statute. *Muhammad*, 540 U. S., at _____ (slip op., at 2). Even so, we were careful in *Heck* to stress the importance of the term "necessarily".  For instance, we acknowledged that an inmate could bring a challenge to the lawfulness of a search pursuant to §1983 in the first instance, even if the search revealed evidence used to convict the inmate at trial, because success on the merits would not *necessarily* imply that the plaintiff's conviction was unlawful. 512 U. S., at 487, n. 7 (noting doctrines such as inevitable discovery, independent source, and harmless error).

*Id.* At 643.

The combination of Heck's footnote 7, Justice Souter's concurrence in *Heck*, and the language cited above from *Nelson* should convince this court that it has jurisdiction to hear plaintiff's case.

**B. As A Policy Matter, Heck Should Not Be Applied To Bar Section 1983 Fourth Amendment Violation Cases Involving Pleas In The Underlying**

**Criminal Matter, Because To Do So  Would Require Extraneous Matters For The Parties To Plead and Prove,  And Further  Could Serve To Undermine Efficient Administration Of Justice Regarding Plea Agreements**

To hold that the *Heck* Bar applies to cases other than those where there is a direct clash between habeus corpus and 1983 remedies results in placing a burden of proof as to extraneous facts that could never have meant to apply to those seeking remedies under 42 U.S.C. 1983.  As an example, assuming the applicability of the *Heck* bar in Fourth Amendment 1983 cases except in those cases where inevitable discovery, independent source or the harmless error doctrines apply, plaintiff in this case would have been required to plead something potentially contrary to his interests, such as the fact that the independent source doctrine could have applied to render his arrest valid, in order to get over a jurisdictional bar in this case.  In view of the fact that section 1983 was created as a doctrine to allow citizens to seek remedies for any constitutional violation, it hardly seems reasonable that the level of pleading and proof need be altered in an absurd and contorted manner.

Further, the rule interpreting the *Heck* footnote to mean that a 1983 plaintiff must prove the applicability of doctrines such as harmless error, inevitable discovery, or other doctrines may in some cases require significantly more witnesses, mini-hearings on harmless error, and other non-sensical

procedural twists that could not have been intended by The *Heck* Court in its footnote seven.

Additionally, it is widely known that entering pleas to criminal charges is done routinely and is beneficial both to prosecutors and to defendants. Defendants oftentimes enter pleas because they cannot afford the cost of a criminal trial. To apply the Heck bar to mean that a criminal defendant runs the risk of eschewing his or her civil rights claims for treasured Fourth Amendment rights because s/he is not wealthy enough to pay a lawyer to bring the case through trial, or otherwise decides it is too risky to go forward with a criminal trial, flies in the face of justice and the intent of the civil rights statutes.

### C. While One Ninth Circuit Case Seems To Apply Heck To Bar A Fourth Amendment Claim, Several Other Circuits Have Held That Heck is inapplicable Under similar facts

In *Harvey v. Waldron,* 210 F.3d 1008, 1015 (9th Cir. 2000) the ninth Circuit held that the statute of limitations for a 1983 claim did not begin to run until either a conviction, dismissal, or plea was entered if there were a related criminal case. *Harvey* interpreted *Heck* as lacking any form of exception for unlawful search claims under § 1983.   (Harvey has effectively been overruled by Wallace v. Kato, xxx in which The Court held the statute of limitations on a 1983 claim was not tolled pending duration of the outcome of a criminal trial.

The Fourth Circuit, in *Ballenger v. Owens,* 352 F.3d 842, 846 (4th Cir.2003)

7

held *Heck* excluded § 1983 cases "[w]hen evidence derived from an illegal search would have to be suppressed in a criminal case if the judgment in the § 1983 claim were to be applied to the criminal case and the suppression would *necessarily* invalidate the criminal conviction."

In *Woods v. Candela*, the second circuit applied a strict interpretation of *Heck* with minimal analysis 47 F.3d 545 (2nd Cir. 1995).  While an unlawful search was central to the claims at issue, the issue before the court was the date upon which the statute of limitations should begin accruing.  *In h*olding that the appellant's 1983 claims could not have been made until the reversal of his conviction, the Court appears to have deemed to find *Heck* applicable to the claim.

However, there are many more jurisdictions who have held otherwise. More particularly, the third, seventh, eighth, tenth and eleventh Circuits have preserved § 1983 claims by effectively holding that plaintiffs may bring § 1983 claims to unlawful searches that produced evidence submitted to their trial because such suits do not *necessarily* require that the conviction is invalid. *See e.g. Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety, 411 F.3d 427, 437-39 (3d Cir.2005); Copus v. City of Edgerton, 151 F.3d 646, 649 (7th Cir. 1998); Simmons v. O'Brien, 77 F.3d 1093, 1095 (8th Cir.1996); Beck v. City of Muskogee Police Dept., 195 F.3d 553, 559 n. 4 (10th Cir. 1999); Datz v. Kilgore*, 51 F.3d 252, 253 (11th Cir.1995).

Thus, plaintiff is not bereft in posing the argument that under the facts of this case, the *Heck* bar was not meant to, nor should apply to bar his claim for violation of the Fourth Amendment right to be free from unreasonable searches from going forward.

## CONCLUSION

For the forgoing reasons, plaintiff respectfully objects to this court's findings and recommendations, and requests that the magistrate reverse its findings and recommendations, that the Judge reverse the Magistrate's findings and recommendations, or that either Magistrate or Judge ask the parties for additional briefing on this matter.

Dated:   June 1, 2009                                        Tania Rose //s//